Robert T. McCANN, Plaintiff,

v.

LITTON SYSTEMS, INC., INGALLS SHIPBUILDING DIVISION, Defendant.

Civ. A. No. S88–0751(R).

United States District Court, S.D. Mississippi, S.D.

July 11, 1991.

Robert W. Smith, Biloxi, Miss., for plaintiff.

William T. Reed, Pascagoula, Miss., and Brooks Eason, Jackson, Miss., for defendant.

## MEMORANDUM ORDER

DAN M. RUSSELL, Jr., District Judge.

This cause is before this Court on the Plaintiff's Motion for Reinstatement.

### Summary of Case to date

A jury trial was had on the above styled civil action on February 26, 1991, at the conclusion of which the jury awarded the plaintiff $246,000.00 as compensation for lost wages.

The jury did not find that the defendant acted willfully and following a Motion filed by the plaintiff for double damages, this Court declined to disturb the jury's verdict in this respect.

On March 4, 1991, the plaintiff filed Motions for Attorney's Fees, Pre–Judgment Interest, and Reinstatement, the first two of which were disposed of by this Court by Memorandum Orders of June 25, 1991.

Regarding the Motion for award of attorney's fees, this Court found for the plaintiff in the sum of $26,145.00 and an additional $1,306.40 in costs.

On the matter of pre-judgment interest, this Court also held for the plaintiff in the sum of $41,319.67.

### Discussion

The alternatives which are available to this Court, notwithstanding the plaintiff's request, are three-fold: reinstatement, an award of "front pay", or a finding that the plaintiff has been made whole.

As set out in 29 U.S.C. § 626(b) regarding the enforcement of the ADEA:

In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section.

Clearly, the statute specifically authorizes reinstatement; however, there is no doubt that reinstatement is not a mandatory remedy but that the choice is within the discretion of the trial court after careful consideration of the facts. *See Cancellier v. Federated Dept. Stores*, 672 F.2d 1312 (9th Cir.) *cert. denied*, 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982).

In exercising its discretion in regard to the subject motion, this Court considers the relief already awarded; the plaintiff's apparent expectations regarding retirement as revealed through testimony at the trial; the plaintiff's difficulty experienced at Avondale; the likelihood, if any, of the existence of substantially similar employment with the defendant; and possible animosity between the parties. These factors and the circumstances which impact them must, in this Court's opinion, be weighed so as to give effect to the underlying goal of making the plaintiff whole.

Considering initially the relief already awarded to date, the financial posture of the plaintiff would appear to be, subject to appeal, such as should place him far along on the way to recovery. This Court has not been privy to the terms of the contract between the plaintiff and his counsel; however, one would be safe in speculating that, with a backpay award of $246,000.00 and a prejudgment interest award of $41,319.67,

coupled with an award of attorney's fees and costs through June 11, 1991, equalling $26,145.00 and $1,306.40, respectively, the plaintiff is well on his way to being made whole.

Next, while this Court would not in and of itself consider such testimony conclusive, it is indisputable according to Mr. McCann's testimony that when asked in 1986 by Mr. Crabb and again by Mr. Hutter about his retirement plans, the plaintiff indicated that he was not planning on retiring before age 70.

Out of an abundance of caution, this Court emphasizes that the aforementioned is not considered as a statement of unequivocal intent by Mr. McCann to retire at age 70; however, neither can it be denied as a possible indication of his expectations, and, as such, and a factor to be considered by this Court.

During the trial Mr. McCann testified in regard to his attempts to mitigate his damages, that he sought and obtained employment at Avondale Gulfport Marine and that he only worked there for a few months before having to leave due to health problems. At trial, evidence of the generally alluded-to health problem was limited to an assertion that he could not climb stairs.

While, pursuant to a pretrial motion, this Court did not allow any specific mention of the plaintiff's underlying health problem which caused his limitations while at Avondale, due to the possibility of prejudice, it is undisputed that Mr. McCann suffered from a cancerous condition.

The plaintiff maintains that he is capable of resuming his former employment at Ingalls and has submitted a short statement from John W. DeGroote, M.D., by letter of June 20, 1991, which merely asserts as follows:

[Robert Thomas McCann] may return to work. I feel there is no reason that he cannot return to his previous job of Director of Program Design for CG–47 Cruiser program.

At a conference on June 11, 1991, held in chambers, this Court expressed its concern regarding the plaintiff's health and in his letter of June 12, 1991, the plaintiff's counsel stated:

I have advised defense counsel that we will obtain doctor's reports next week attesting to Mr. McCann's fitness to return to work and will furnish same to defense counsel and Your Honor.

While this Court can appreciate the plaintiff's need to limit his expenditures, quite frankly the letter of Dr. DeGroote is of limited scope and value considering the nature of the relief requested. And, while it is outside of this Court's expertise to make specific conclusions regarding the exact state of Mr. McCann's health, this Court cannot reasonably agree with plaintiff's counsel's assertion in his letter of July 8, 1991 that "McCann's health is not questionable."

Possibly the dominant factor, especially when woven into the fabric of the other facts and factors, is the problem of where to reinstate the plaintiff.

The defendant with his supplemental response submitted the July 2, 1991 Affidavit of Dennis F. Knecht, Vice–President of Public and Industrial Relations for Ingalls Shipbuilding Incorporated. This affiant states as follows:

Ingalls currently has no opening in a position that is comparable to the position held by Robert McCann as Design Director for the Cruiser Program in status, pay, promotional opportunities, and fringe benefits. Additionally, because all of Ingalls' programs are relatively mature-that is, they have largely moved from the design phase to the construction phase-it is not anticipated that a comparable position will be created in the foreseeable future.

Finally, as to the possible animosity which the defendant points to, this Court does not find that it exists to any appreciable extent. The trial testimony and demeanor of Mr. McCann and the defendant's administrative personnel gave no indication to this Court that any significant hostility was present.

The only instance, known to this Court, of antagonistic behavior exhibited by Mr. McCann is a letter dated May 16, 1991

addressed to United States Senator Trent Lott (with copies to Senators Thad Cochran and John Melcher and to Congressman Gene Taylor). The significant parts of that letter are as follows:

Because of your history and reputation for aiding senior citizens, I seek your assistance in resolving a dispute I have with Ingalls Shipbuilding over age discrimination.

. . . .

Rather than admit their wrongdoing, pay me back wages and put me back to work, Ingalls continues to delay. It is apparent from a letter they recently sent to the court reporter that they plan to appeal. In the last few days, they have hired the Brunini firm from Jackson to enter the case. (Enclosed find a copy of their Entry of Appearance.) Rather than pay what they owe and be done with it, Ingalls continues to pay lawyers thousands of dollars to fight this meritorious case. Obviously, their tactic is to delay until I die or become too old and disabled to work.

It is within your power to help. If Ingall's management knows of your office's interest and concern over the case, perhaps different decisions will be made. Ingalls is entirely dependant on government contracts and I am sure wishes to keep on good terms with your office.

While the subject letter to Senator Lott was possibly ill-conceived and untimely, this Court does not find it to be so vitriolic or vilifying as to seriously impede reinstatement.

Notwithstanding the relative insignificance of the last factor in this Court's analysis, the record and the observations made by this Court during the course of these proceedings leave this Court with no appreciable doubt that the factors as a whole weigh against granting Mr. McCann reinstatement.

■ Although this Court concludes that reinstatement is not a reasonably achievable alternative, it does not conversely conclude that the plaintiff has been made whole.

Fortunately, a third alternative is available in the form of award of "front pay." As cited by the defendant, *Walsdorf v. Board of Commissioners for the East Jefferson Levee District*, 857 F.2d 1047 (5th Cir.1988), provides for front pay under similar circumstances. The *Walsdorf* court set out in pertinent part:

[T]he Supreme Court has cautioned against the use of a remedy that 'bumps' one employee from a position in order to fill it with the victim of discrimination. *Firefighters v. Stotts*, 467 U.S. 561, 579, 104 S.Ct. 2576, 2588, 81 L.Ed.2d 483 (1983). Several lower courts have recognized the award of front pay as an alternative to the bumping of an incumbent employee. *Locke v. Kansas City Power and Light Co.*, 660 F.2d 359 (8th Cir. 1981); *Patterson v. American Tobacco Co.*, 535 F.2d 257 (4th Cir.1976), *cert. denied*, 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976). See also *Franks v. Bowman Transportation Co., Inc.*, 424 U.S. 747, 780–81, 96 S.Ct. 1251, 1271–72, 47 L.Ed.2d 444 (1976) (concurring opinion of Burger, C.J. suggesting front pay as an alternative to award of retroactive seniority). Where possible, we should fashion remedies that serve the purposes of Title VII-remedies that compensate the victims of past discrimination and deter employers from the inclination to discriminate in the future—and, at the same time, avoid tampering with the rights of other employees who did not participate in the discriminatory activity.

*Id.* at 1054.

Although the *Walsdorf* case dealt with sexual discrimination under 42 U.S.C. § 2000e (Title VII), this Court finds the considerations to be applicable herein.

The particular employee, Richard Schenk, who the jury apparently found to have replaced Mr. McCann, has since moved from the Director of the Aegis Destroyer Program and replaced by another "innocent" employee. It is therefore arguable that reinstatement would necessitate the bumping of an innocent incumbent employee.

Finding as it does that "front pay" is the best alternative, considering the facts of this case, what remains is a determination of appropriate amount.

A small but significant product of the June 11, 1991 conference was an agreement that *"if* front pay is ordered and *if* the front pay is limited to the date McCann reaches his 70th birthday, the appropriate amount would be $61,462.94."

It is this Court's opinion that, considering the totality of the record with particular emphasis on Mr. McCann's health record and his own testimony, this award will achieve the intent of the statute and make him whole.

IT IS THEREFORE ORDERED AND ADJUDGED that the plaintiff's Motion for Reinstatement is DENIED and that he be awarded "front pay" in the sum of $61,462.94.

SO ORDERED AND ADJUDGED.